IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CR-115-1H

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| CALVIN C. UNDERDUE, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on Defendant's motion to suppress [DE #27], which has been referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). The Government filed a response in opposition to the motion to suppress. To further develop the record, the undersigned conducted an evidentiary hearing on September 22, 2015, at which the Government and Defendant, with counsel, appeared. Accordingly, the matter is now ripe for decision.

## STATEMENT OF THE CASE

On December 20, 2014, a federal grand jury returned a seven-count indictment charging Calvin C. Underdue ("Underdue") with possession with intent to distribute a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1); using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A); two counts of making a false statement pertaining to information required to be kept by federal firearms licensees, in violation of 18 U.S.C. § 924(a)(1)(A); two counts of making a false statement in connection with the purchase of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 924; and receipt of a firearm while under indictment for a felony, in violation of 18 U.S.C. §§ 922(n) and 924(a)(1)(D).

On July 17, 2015, Underdue filed the instant motion to suppress. Underdue contends that he was subjected to an unlawful and unconstitutional search and seizure of his person and his vehicle and that the Fourth Amendment demands that any evidence obtained, including any inculpatory statements made by him, be suppressed. Additionally, Underdue contends that any inculpatory statements were obtained in violation of his Miranda rights and must be suppressed on that basis as well. The government argues that the officers' actions were supported by reasonable suspicion to believe that Underdue was engaged in criminal activity and that the search and seizure was reasonable under the circumstances.

## **STATEMENT OF THE FACTS**

At the evidentiary hearing on Underdue's motion, the court heard the testimony of Officer Robert Riley and Officer Will Morris, both of whom are employed with the Wilmington Police Department. Also admitted into evidence was a video of the officers' encounter with Underdue, photographs and documentary evidence. Based upon the officers' testimony and the exhibits admitted into evidence, the undersigned makes the following findings of fact.

At approximately 1:00 a.m. on Monday, March 22, 2010, Officers Riley and Morris were patrolling the area of the Travelodge motel located at 4118 Market Street in Wilmington, a known haven for drugs and prostitution. Approximately two weeks before, Officer Riley had made contact with a prostitute by the name of Mari who was staying at the Travelodge. Officer Riley had seen Mari going from room to room, knocking on the door and befriended her in hopes that she would become a source of information. Mari told Officer Riley that she was new to the area, that she had a cocaine problem, and that she was working as a prostitute.

Officer Morris was a new officer, still in training and had been riding with Officer Riley for a few days prior to March 22, 2010. The day before, Officer Riley had introduced Officer

2

Morris to Mari. They had seen Mari walking toward a construction work crew that was staying at the motel and pulled up beside her in their patrol vehicle. Officer Riley asked Mari to tell Officer Morris about herself and how her addiction had affected her. They had a "lighthearted" conversation and Mari acted as though she knew they were not there to bother her. She told Officer Morris she was a prostitute who used cocaine and she pointed out her room to him.

As Officer Riley drove through the Travelodge parking lot the morning of March 22, 2010, he and Officer Morris noticed a Honda Accord that had been backed into a parking space at the back corner of the parking lot near Mari's room. An individual, later identified as Underdue, was seated in the driver's seat of the vehicle talking on his cell phone. The officers waved as they drove by, but Underdue did not wave back. The officers noted that Underdue was not exiting the vehicle, and thought his behavior was suspicious. As a consequence, the officers circled the motel a second time. Underdue had not moved, and Officer Riley formed the opinion that he was there because of Mari – that he was either a customer or pimp of Mari's or was there to supply her with drugs. Officer Riley stopped to speak with Underdue, positioning his patrol vehicle at an angle in front of Underdue's. Officer Riley did not block Underdue from leaving, and no lights or sirens were activated.

The officers got out of the patrol car and started toward Underdue's vehicle. As the officers approached, Underdue started the vehicle's engine, causing the officers' senses to be heightened. Officer Morris approached the driver's side of the vehicle and made contact with Underdue while Officer Riley called dispatch to check the vehicle's registration and covered Officer Morris. Underdue told the officers he had been on the phone talking with his friend Mari and that he was there to visit Mari but was waiting because she was with someone. Officer Morris asked Underdue whether he had any weapons, and Underdue responded that he had a

3

gun. Officer Riley advised Officer Morris to have Underdue get out of the car, which he did. Officer Riley took from Underdue's right front pocket a revolver loaded with five rounds of ammunition, then conducted a frisk for other weapons. Underdue stated that he had a concealed weapons permit.

While patting down Underdue, Officer Riley felt what appeared to be an unusually large amount of currency but did not seize the currency at that time. Officer Riley asked Underdue for consent to search the vehicle, which Underdue refused. Based upon Underdue's possession of the gun, what was believed to be a large amount of currency on Underdue's person, Underdue's explanation for his presence at the motel, and the officers' knowledge of Mari's involvement with drugs and prostitution, Officer Riley radioed for a canine unit to search for narcotics.

Canine Officer Seitter and his canine Huck arrived at the motel around 1:10 p.m. As Officer Seitter was getting Huck out of his patrol vehicle, Underdue began feeling faint, fell against his vehicle, and slid to a squatting position on the ground. Another officer came to attend to Underdue. Approximately four minutes later, Underdue was led away from the vehicle so that the canine could conduct a search of the vehicle. As the canine unit began to search the vehicle, Underdue again experienced lightheadedness. The canine search was stopped, and Officer Riley approached Underdue. Concerned that Underdue had attempted to conceal drugs on his person by ingesting them, Officer Riley asked Underdue what he had taken. When the search resumed shortly thereafter, the canine alerted on the passenger side of the vehicle.

Following the canine's alert, officers then conducted a warrantless search of the vehicle's interior. Located within the vehicle were 294.6 grams of cocaine, a digital scale, two cell phones and pawn tickets for the sale of twelve firearms. A search of Underdue's person revealed $1,684 in United States currency. Underdue was placed under arrest at that time. Due to Underdue's

4

fainting spells, the officers called emergency medical services ("EMS"). EMS arrived, but Underdue refused medical treatment.

After his arrest, Underdue was transported to the Wilmington Police Department. At the police department, Underdue waived his Miranda rights and made incriminating statements about the cocaine.

## DISCUSSION

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures of "their persons, houses, papers, and effects." U.S. Const. amend. IV. "This inestimable right of personal security belongs as much to the citizen on the streets of our cities as to the homeowner closeted in his study to dispose of his secret affairs." *Terry v. Ohio*, 392 U.S. 1, 8-9 (1968). The "[t]emporary detention of individuals . . . by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision." *Whren v. United States*, 517 U.S. 806, 809-10 (1996). Nevertheless, "'the balance between the public interest and the individual's right to personal security' tilts in favor of a standard less than probable cause" in cases of brief investigatory stops of persons or vehicles. *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)). Thus, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

Whether reasonable suspicion exists to support such a stop is a factual question "not readily, or even usefully, reduced to a neat set of legal rules, but, rather, entails commons sense, nontechnical conceptions that deal with factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *United States v. Foreman*,

5

369 F.3d 776, 781 (4th Cir. 2004). "Reasonable suspicion is a 'less demanding standard than probable cause,' requiring a showing 'considerably less than preponderance of the evidence.'" *United States v. Jones*, 289 Fed. App'x 593, 597 (4th Cir. 2008). "A host of factors can contribute to a basis for reasonable suspicion, including the context of the stop, the crime rate in the area, and the nervous or evasive behavior of the suspect." *United States v. George*, 732 F.3d 296, 299 (4th Cir. 2013).

The Fourth Amendment is generally not implicated in a "police-citizen encounter" where law enforcement officers approach someone in a public place and ask him a few questions. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). "So long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." *Id.* Where, however, the officers' conduct is such that a reasonable person would not feel free to decline the officers' requests or otherwise terminate the encounter, a Fourth Amendment seizure occurs. *Id.* at 439.

The evidence presented at the hearing in this case establishes reasonable suspicion for the investigatory stop of Underdue and the officers' subsequent actions. The officers encountered Underdue at a motel known for drug activity and prostitution at 1:00 a.m. Underdue was on the phone, seated in a vehicle that was parked near the room of a known prostitute with the engine off and positioned such that the vehicle could make a quick getaway. The officers waved as they drove by, but Underdue neither acknowledged the officers nor made any move to exit his vehicle or leave the motel. As the officers made a second pass through the motel parking lot, they noticed Underdue had not moved.

It need not be determined in this case at what point Underdue would have felt compelled to comply with the officers' requests. Even assuming Underdue was detained for investigatory

6

purposes when the officers first approached Underdue's vehicle and not when they subsequently asked Underdue to exit his vehicle, the totality of the circumstances demonstrate a reasonable suspicion to believe that Underdue was at the motel for an illicit purpose. The officers' decision to investigate Underdue's presence was, therefore, justified.

Events that transpired following the officers' initial encounter with Underdue bolstered the officers' suspicion and justified the weapons frisk and canine sniff of the exterior of Underdue's vehicle. Upon learning that Underdue was in possession of a concealed firearm, lawfully or otherwise, the officers were entitled to conduct a weapons frisk "to allow the officers to pursue [their] investigation without fear of violence." *Adams v. Williams*, 407 U.S. 143, 146 (1972). During the frisk, Officer Riley felt what appeared (and was subsequently confirmed) to be a substantial sum of currency, giving the officers even more reason to suspect Underdue may be involved in drug activity. Underdue's explanation of his presence at the motel – that he was there to meet Mari – did nothing to dispel the officers' suspicions, as Mari was known by them to be a prostitute and drug addict. Given the totality of the circumstances as they were known to the officers at the time, Officer Riley was warranted in extending the duration of the investigatory stop in order to have a canine sniff conducted on the exterior of Underdue's vehicle.

As the canine sniff was performed only on the exterior of Underdue's vehicle while Underdue was lawfully detained, it did not implicate any Fourth Amendment concerns. *United States v. Place*, 462 U.S. 696, 706-07 (1983) (holding that canine search of property located in a public place does not constitute a search within the meaning of the Fourth Amendment). Although the officers' subsequent search of the interior of the vehicle does implicate Fourth Amendment concerns, the canine's alert on the exterior, right side of the vehicle indicated the

presence of narcotics inside the vehicle, providing the officers with probable cause to search the interior of the vehicle. *United States v. Mason*, 628 F.3d 123, 130 (4th Cir. 2010).

The duration of Underdue's detention in this case was justified by the officers' reasonable suspicions developed during their encounter with Underdue, and their search of Underdue's vehicle was supported by probable cause. Based upon the evidence seized from the vehicle, probable cause existed to arrest Underdue. Following his arrest, Underdue was given and waived his Miranda rights prior to making the incriminating statements at issue here. Accordingly, Underdue's motion to suppress the evidence obtained as a result of the March 22, 2010, seizure should be denied.

## **CONCLUSION**

For the foregoing reasons, the undersigned RECOMMENDS that Defendant's Motion to Suppress [DE #27] be DENIED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **November 9, 2015**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 23rd day of October 2015.

_____
KIMBERLY A. SWANK
United States Magistrate Judge